ORIGINAL

FILED
AUG 2 3 2005
U S COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN FLOOR CONSULTANTS AND INSTALLATIONS, INC., and CLAYTON W. KING, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NO. |
| THE UNITED STATES, THE UNITED STATES DEPARTMENT OF THE AIR FORCE, and UNKNOWN JOHN DOE AGENCIES OF THE UNITED STATES OF AMERICA 1 through 10, | ) | |
| Defendants. | ) | |

## COMPLAINT

Come now the Plaintiffs, American Floor Consultants and Installations, Inc. (hereinafter "American"),and Clayton W. King (hereinafter "King") and respectfully state their complaint as follows:

## Nature of the Case

1.

This is action for monetary damages involves breach of contract and tortious conduct by the United State and the United States Air Force occurring during a flooring installation by American Floor Consultants and Installations, Inc., for the USAF at the Seymour Johnson Air Force Base, North Carolina pursuant to a contract dated November 29. 1999.

2.

The Air Force breached a written contract dated January 4, 2000, wherein the Air Force

agreed that, in exchange for Plaintiffs providing certain information requested by the Air Force regarding the administration of the November 29, 1999 contract, the Air Force would assure and guarantee that neither the Plaintiffs nor any of their employees would be the subject of any investigation or criminal proceeding.

3.

Plaintiffs provided the information requested by the Air Force. In breach of the contract, the Air Force did conduct an investigation of Plaintiffs and thereafter debarred Plaintiffs from contracting with the United State Government.

**The Parties**

4.

The Plaintiff, American, is a Georgia corporation with its principal place of business in Atlanta, Georgia.

5.

The Plaintiff, Mr. King, is a resident of the State of Georgia and is the president and sole shareholder of American.

6.

The Defendants, the United States and the United State Air Force, were a parties to the January 4, 2000 contract.

7.

John Doe Agencies 1 through 10 are unknown agencies of the United States Government who may have participated in the conduct alleged herein.

**Jurisdiction and Venue**

8.

This Court has jurisdiction over this matter pursuant to the Tucker Act, 28 USC §1491, et. seq., in that it arises from a breach of an express contract with the United States.

9.

Pursuant to Rule 4 of the Rules of the United States Court of Federal Claims, service of the complaint shall be made upon the United States and the United States Air Force by delivery to the Attorney General of the United States of sufficient copies of the complaint as required by Rule 4.

**Factual Allegations**

10.

On or about November 29, 1999, American was awarded a contract with the Department of the Air Force to install flooring in two hangers at the Seymour Johnson Air Force Base in North Carolina (the "SJAFB contract").

11.

American performed the work required by the SJAFB contract and completed that work on or about February 2001.

12.

During American and Mr. King's performance of the SJAFB contract, American and Mr. King notified the Air Force of potential improper actions by an Air Force Contracting Specialist named Ms. Julia Mathis. The Air Force then investigated those potentially improper actions. As part of that investigation, which resulted from the report by American and Mr. King, an Air

Force Captain and attorney named Davis L. Brown requested certain information from American and Mr. King.

13.

Prior to responding with the requested information, through counsel, Plaintiffs requested that the Air Force provide a written guarantee that Plaintiffs' cooperation in the Mathis investigation would have no adverse consequences on Mr. King or American or on the SJAFB contract.

14.

In a letter agreement dated January 4, 2000, from Captain Brown to Mr. King, the Air Force, through Captain Brown provided a further written assurance and guarantee stating:

> "I do have the authority to guarantee the following: ***you have my assurance and guarantee*** that neither you, nor American Floor Consultants, nor any other employee of American Floor Consultants, is or will be the subject of ***any investigation or criminal proceeding*** resulting from this matter."

(Exhibit "A" hereto [emphasis supplied]).

15.

The January 4, 2000 letter agreement constituted an express contract between the Air Force and the Plaintiffs.

16.

In reliance upon the contract, Plaintiffs fully cooperated with the Air Force and provided the materials requested pertaining to the investigation of Mathis.

17.

Plaintiffs fully performed as required by the contract.

18.

In a memorandum dated January 6, 2000, the Air Force, stated that it had no intention of terminating the SJAFB contract. (Ex. "B" hereto).

19.

Notwithstanding the January 4, 2000 contract and Plaintiffs' complete adherence thereto and cooperation with the Air Force's investigation of Mathis, on or about August 10, 2000, the Air Force sent American and Mr. King a Notice of Proposed Debarment (the "Notice"). (Ex. "C" hereto). The Notice of Proposed Debarment included a Memorandum in Support of the Proposed Debarment of American and Mr. King, among others (the "Memorandum").

20.

The Memorandum contained allegations of fact about American and Mr. King which were false and completely untrue and set out conclusory bases for proposing debarment based on the erroneous factual allegations. The Air Force falsely alleged that American, Mr. King and Ms. Mathis allegedly (1) "committed crimes" in connection with performing the SJAFB contract "indicating a lack of business integrity or business honesty so as to affect their present responsibility to be Government contractors or subcontractors" and (2) willfully failed to perform the SJAFB contract.

21.

The allegations by the Air Force in the Memorandum, including those pertaining to the commission of crimes, were patently false.

22.

American and Mr. King did not commit any crimes or perform any inappropriate actions at any time including during or in connection with the performance of the SJAFB contract and no criminal charges or indictments were filed or initiated against American or Mr. King.

23.

Thereafter, the Air Force sent American and King a Notice of Superseding Proposed Notice Debarment and Superseding Memorandum in Support of the Proposed Debarments dated August 30, 2001. (Exhibit "D" hereto).

24.

The Superseding Memorandum deleted allegations of criminal acts by American and King illustrating the bad faith manner is which the Air Force breached the January 4, 2000 contract. The Superseding Memorandum continued to contain untrue allegations of dishonesty and lack of business integrity on the part of American and King.

25.

Through counsel, Plaintiffs responded to the Notice of Proposed Debarment and Superseding Notice of Proposed Debarment by submitting information and affidavits of King.

26.

On December 31, 2001, the Air Force issued Notices of Debarment to American and King, debarring them from contracting with the United States government for three years commencing August 10, 2001 and extending until August 9, 2004. (Ex. "E" hereto).

27.

The Notice of Proposed Debarment, the Superseding Notice of Proposed Debarment and

the debarment have caused direct and substantial harm to Plaintiffs, including but not limited to the following:

a) publication in the List of Parties Excluded From Federal Procurement and Nonprocurement Programs.

b) Inability to bid on dozens if not hundreds of government contracts;

c) Inability to obtain Federal Government contracts;

d) Inability to obtain state government contracts;

e) Interference with existing government contracts;

f) Loss of numerous pending contracts;

g) Loss of good will and damage to reputation and in the business community.

28.

Issuing the Notice of Proposed Debarment, the Superseding Notice of Proposed Debarment and pursuing the debarment of Plaintiffs was in breach of the terms of the January 4, 2000 contract relied upon by Plaintiffs in cooperating with the Air Force in the Mathis investigation.

29.

Issuing the Notice of Proposed Debarment, the Superseding Notice of Proposed Debarment and pursuing the debarment was in breach of the contract and the assurance and guarantees provided therein by the Air Force and relied upon by Plaintiffs in that said acts constitute an investigation of Plaintiffs resulting from the Mathis matter.

30.

Issuing the Notice of Proposed Debarment containing allegations of the commission of

crimes was in breach of the contract and the assurances and guarantees provided therein by the Air Force and relied upon by Plaintiffs in that said act constitutes a criminal proceeding against Plaintiffs resulting from the Mathis matter.

31.

As the direct and proximate result of the breach of the Air Force's breach of contract, American and Mr. King were prohibited from bidding upon and being awarded Federal Government for a period of three years causing great damages to American and Mr. King.

32.

The breach of contract and debarment effectively destroyed American's business and King's livelihood and was the direct and proximate result of Air force's breach of the express the assurance and guarantee that neither American nor King would be the subject of any investigation and the negligent manner in which the Air Force thereafter conducted an investigation.

33.

The actions of the Air Force also constitute a tortious breach of its duty of good faith and fair dealing.

34.

Plaintiffs show that the Defendant's breach of contract and bad faith and unfair investigation proximately caused damages to Plaintiffs.

35.

Plaintiffs show that the January 4, 2000 contract was entered into by the Air Force in a proprietary manner ancillary to the November 29, 1999 contract for the purchase of goods and

services at SJAFB.

36.

Plaintiffs show that the breach of contract by the Air Force is an act for which private citizens would be liable to the Plaintiffs.

37.

From the date of the initial Notice of Proposed Debarment until the present and continuing until August 9, 2004 Plaintiffs were absolutely prohibited and precluded from bidding on dozens, if not hundreds of Federal Government contracts.

38.

As the direct and proximate result of the acts set forth herein, Plaintiffs have sustained a loss of income, profits and business opportunity and a continuing stigma upon their reputations in the business community for which Plaintiffs seek damages herein.

39.

Pursuant to 28 USC §2412, Plaintiffs request an award of attorney's fees, costs and expenses of litigation.

WHEREFORE, Plaintiffs respectfully pray and request that:

1. Plaintiffs be awarded damages in amount no less than $25,000,000 or an amount to be determined at trial;
2. Plaintiffs be awarded reasonable attorney's fees, costs and expenses of litigation;
3. Plaintiffs have such other and further relief as appropriate under the premises.

This 18th day of August, 2005.

David M. Kupsky
State Bar No.: 430465
Attorney for Plaintiffs

Suite 1250, Two Midtown Plaza
1349 W. Peachtree Street
Atlanta, Georgia 30309
404-881-1111 (telephone)
404-881-8040 (facsimile)

**DEPARTMENT OF THE AIR FORCE**
4TH FIGHTER WING (ACC)
SEYMOUR JOHNSON AIR FORCE BASE NC

January 4, 2000

4 FW/JA
1540 Goodson St., Ste. 100
Seymour Johnson AFB, NC 27531

BY FAX
Clayton W. King
American Floor Consultants
(770) 421-6888

Dear Mr. King,

As promised, I am faxing you a list of the evidence within your control that would be helpful for us in sustaining the removal of our Contracting Specialist, Julia Mathis. The bases for the removal will be (1) improper relationship with a contractor, in that she asked American Floor to hire her son and asked you for a personal loan; and (2) negligent administration of the contract between Seymour Johnson AFB and American Floor (details still to be developed).

You and your attorney, Tim Kratz, have asked me for a written guarantee that this matter will not have any adverse consequences for you, your company, or the contract. The commander of the 4th Contracting Squadron, Major Steve Elliott, has told both you and me that he does not intend to terminate this contract. If you would like a written guarantee of that, you will need to contact Major Elliott, as I do not have the authority to guarantee that.

I do have the authority to guarantee the following: you have my assurance and guarantee that neither you, nor American Floor Consultants, nor any other employee of American Floor Consultants, is or will be the subject of any investigation or criminal proceeding resulting from this matter.

We would to obtain the following evidence to support our case:

1. A written, sworn statement, using an Air Force form, from you setting out in detail exactly when, where, and how Ms. Mathis asked you to hire her son and when, where, and how she asked you for a personal loan. When you inform that you are ready to make such a statement, I will have a member of Security Forces visit you to accomplish the necessary paperwork. You may draft and print out your statement in advance, if you wish.

2. A similar written, sworn statement from anyone else who has personal knowledge of the events described above. Major Elliott has told me that Joseph Deleo may have pertinent information, and if so, I would appreciate the opportunity to interview him.

PLAINTIFF'S EXHIBIT
A

3. A copy of any written communication or email Ms. Mathis may have sent you or the company asking that her son be hired.

4. A copy of the employment application of Ms. Mathis's son.

5. A copy of the payroll records on Ms. Mathis's son.

6. A copy of the checks you showed Major Elliott and me which were made out to Ms. Mathis's son, with an explanation of remarks about the loan on these checks.

7. A copy of any written communication or email Ms. Mathis may have sent you about requesting a personal loan.

8. A copy of any documentation, draft or otherwise, you have concerning the personal loan. For example, any promissory note you may have prepared but not execute.

9. Any other documentation you consider relevant or useful.

I would also like to conduct an extensive interview with you to flesh out the matters we discussed concerning Ms. Mathis negligent administration of this contract, i.e. things she told you that caused the company to incur unnecessary costs.

We are planning to interview Ms. Mathis the morning of Monday, January 10. If you could provide us with as much as possible by Friday the 7th, I would greatly appreciate it. I look forward to talking with you again, and if you have any questions, you can reach me at (919) 722-5322.

Sincerely,

DAVIS L. BROWN II, Captain, USAF
Chief, Labor Law

cc: Tim Kratz
McGuire Woods Battle & Booth
Atlanta, GA

# DEPARTMENT OF THE AIR FORCE

HEADQUARTERS 4TH WING (ACC)
SEYMOUR JOHNSON AIR FORCE BASE NC

6 January, 2000

MEMORANDUM FOR American Floor Consultants & Installations, Inc.
811 Fox Street NW, Suite B
Atlanta, GA 30318
ATTN: Mr. Clayton King

FROM: 4 CONS/LGCC
1695 Wright Brothers Avenue
Seymour Johnson AFB, NC 27531-2459

SUBJECT: Contract #F31610-99-DC008

1. This letter is to assure you that we currently have no intention of pursuing a termination for default on the subject contract. In fact, I am aware of a letter signed out yesterday by your contracting officer which stated he is "committed to working with you to make this a successful contract" and "I believe, in effect, these actions respond properly to the Cure Notice."

2. I plan on being personally involved in the contractual issues we currently have through resolution and you also have my personal commitment to making this contract a success for the both of us.

3. I hope this letter addresses any concern you may have about the Government's current intentions regarding this contract. If you have any further questions, please let me know. I'm available at (919) 722-5411 x238, or e-mail at steve.elliott@seymourjohnson.af.mil.

STEPHEN M. ELLIOTT, Major, USAF
Commander, 4th Contracting Squadron

cc's: Mr. Tim Kratz
Capt Davis Brown

*Global Power For America*

PLAINTIFF'S EXHIBIT
B

DEPARTMENT OF THE AIR FORCE
WASHINGTON, DC 20330-1740

Office Of The Deputy General Counsel

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. Clayton Willie King
1431 Glynn Oaks Drive
Marietta, GA30008

10 AUG 2001

Re: Notice of Proposed Debarment

Dear Mr. King:

You are hereby notified that the Air Force has proposed that you be debarred from Government contracting and from directly or indirectly receiving the benefits of federal assistance programs. This action is initiated pursuant to the authority of and the debarment procedures contained in the Federal Acquisition Regulation (FAR) Subpart 9.4. Copies of FAR Subpart 9.4, Defense FAR Supplement 9.4 and Appendix H, and 32 C.F.R. Part 25 are enclosed for your information (Encl. 1). 32 C:F.R. Part 25 is the Defense Department's implementation of the Nonprocurement Common Rule, referenced in FAR 9.401.

The proposed debarment is based upon the information in the attached Memorandum In Support of the Proposed Debarment (Encl. 2).

The proposed debarment is effective this day and has the following consequences during the period of proposed debarment:

1. Your name, Clayton Willie King, will be published in the List of Parties Excluded From Federal Procurement and Nonprocurement Programs, a publication of the General Services Administration containing the names of contractors debarred, suspended, proposed for debarment, or declared ineligible by any agency of the Federal Government. Proposed debarment is effective throughout the executive branch of the Federal Government.

2. Offers will not be solicited from, contracts will not be awarded to, existing contracts will not be renewed or otherwise extended for, and subcontracts requiring Government approval will not be approved for you by any agency in the executive branch of the Federal Government unless the head of the agency taking the contracting action or a designee states in writing the compelling reason for continued business dealings between you and the agency.

PLAINTIFF'S EXHIBIT
C

3. You may not conduct business with the Federal Government as an agent or representative of other contractors, nor may you act as an individual surety for other contractors.

4. No Government contractor may award a subcontract equal to or in excess of $25,000 unless there is a compelling reason to do so and the contractor first notifies the contracting officer and further complies with the provisions of FAR 9.405-2(b).

5. No agency in the executive branch shall enter into, renew, or extend primary or lower-tier covered transactions in which you are either a participant or principal, unless the head of the agency grants an exception in writing. (Covered transactions are defined at 32 C.F.R. Section 25.110).

6. You may not act as an agent or representative of other participants in federal assistance programs.

7. Your affiliation with or relationship to any organization doing business with the Government will be carefully examined to determine the impact of those ties on the responsibility of that organization to be a Government contractor or subcontractor.

Within thirty calendar days after receipt of this notice, you or a representative on your behalf may submit, either in person or in writing, or both, information and argument in opposition to the proposed debarment. If you designate a representative to respond, please notify my counsel in writing of the identity of the representative. The designation should specifically state the names and addresses of all individuals or companies the designee has the authority to represent in this matter.

Your submission, if any, should include any specific information that may raise a genuine dispute over material facts. If it is found that the information submitted raises a genuine dispute over material facts, factfinding may be conducted to determine the disputed facts. Facts proved by conviction or civil judgment, however, are not subject to dispute in this proceeding.

This debarment proceeding has been initiated on the basis of an administrative record. A copy of the record will be furnished upon request. Any written information you submit will become part of the administrative record.

The determination whether or not to debar you is discretionary and will be made on the basis of the administrative record, together with any written materials submitted for the record by the Government or you during the period of proposed debarment.

If debarment is imposed, the limitations described in Paragraphs 1 through 7 above will continue to apply and your name, Clayton Willie King, will continue to be published in the List of Parties Excluded From Federal Procurement and Nonprocurement Programs. Your status, however, will be changed to reflect that you are debarred.

Any communications regarding this matter should be directed to my counsel, Richard A. Pelletier, at (703) 693-9819, or by email at "richard.pelletier@pentagon.af.mil." Any written submissions should be addressed to Mr. Pelletier and forwarded to him at SAF/GCR, 1740 Air Force Pentagon, Washington, DC 20330-1740.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

2 Encl.
a/s

DEPARTMENT OF THE AIR FORCE
WASHINGTON DC 20330-1740

Office of the Deputy General Counsel

10 AUG 2001

MEMORANDUM IN SUPPORT OF THE PROPOSED DEBARMENTS OF:

AMERICAN FLOOR CONSULTANTS AND INSTALLATIONS, INC.
TRAXX INDUSTRIES, INC.
CLAYTON WILLIE KING
JULIA ELAINE MATHIS, a/k/a
JULIA WHITE, a/k/a
JULIA MATHIS WHITE
WILLIAM ANDRE MATHIS

Effective this date the Air Force has proposed the debarments of American Floor Consultants and Installations, Inc. (AFCII), TRAXX Industries, Inc. (Traxx), Clayton Willie King (King), Julia Elaine Mathis (Ms. Mathis), a/k/a Julia White, a/k/a Julia Mathis White, and William Andre Mathis (W.A.Mathis) from Government contracting and from receiving, directly or indirectly the benefits of federal assistance programs. The actions are initiated pursuant to Federal Acquisition Regulation (FAR) Subpart 9.4

INFORMATION IN THE RECORD

Information in the record indicates that at all times relevant hereto:

1. AFCII was a Georgia corporation engaged in the flooring and resurfacing business. In October 1999 AFCII was awarded contract F31610-99-D-C008 (the contract) to resurface hanger bays at Seymour Johnson Air Force Base, NC (SJAFB).

2. Traxx was a Georgia company, incorporated in February 2000.

3. King was president and shareholder of AFCII, and was the Chief Executive Officer of Traxx.

4. Ms. Mathis was a contracting specialist at the 4th Mission Support Squadron, SJAFB. She was responsible for completing the Performance Evaluation Report for all bidding companies, including AFCII, during the solicitation stage of the contract. She rated AFCII as the lowest responsive, responsible bidder, resulting in the contract being award to AFCII.

5. W.A.Mathis was an employee of AFCII, and the son of Ms. Mathis.

6. Prior to the award of the contract, Ms. Mathis asked King to hire her son, W.A.Mathis. King did hire W.A.Mathis to work for AFCII. King also paid for an airline ticket for W.A.Mathis to fly to North Carolina, and loaned him money. King made these accommodations to W.A.Mathis

in order to obtain improper favorable treatment from Ms. Mathis on behalf of AFCII in the award and administration of the contract.

7. Ms. Mathis endorsed and negotiated at least one of the loan checks from King payable to her son, W.A.Mathis, and kept the money for herself.

8. After the contract was awarded, King offered Ms. Mathis $5,000 to insure that AFCII's invoices were promptly paid, that disputes were resolved, and that the contract ran smoothly. Ms. Mathis did not report that attempted bribe until after investigators had interviewed her concerning allegations about King hiring W.A.Mathis to work for AFCII.

9. During contract performance, AFCII fell behind schedule and ignored specification requirements to such an extent that the contracting officer issued a cure notice demanding the company take corrective action. When the contracting officer tried to evaluate the work done up to the point of the cure notice, he found AFCII had not performed enough work so that he could make an evaluation.

BASIS FOR PROPOSED DEBARMENTS

1. AFCII, King, and Ms. Mathis committed crimes in connection with obtaining and performing a public contract, and crimes indicating a lack of business integrity or business honesty so as to affect their present responsibility to be Government contractors or subcontractors. As such, their conduct provides separate bases for their debarments pursuant to FAR 9.406-2(a)(1), (3), and (5).

2. AFCII's willful failure to perform in accordance with the terms of the contract, history of failure to perform and unsatisfactory performance of the contract provides a separate and independent basis for its debarment pursuant to FAR 9.406-2 (b)(1)(i).

3. AFCII's, King's, and Mathis's misconduct is so serious or compelling in nature that it affects their present responsibility to be Government contractors or subcontractors and provides a separate basis for their debarments pursuant to FAR 9.406-2 (c).

4. The crimes and seriously improper conduct of King may be imputed to AFCII, pursuant to FAR 9.406-5(a), because his crimes and seriously improper conduct occurred in connection with the performance of duties for or on behalf of AFCII, or with the knowledge, approval, or acquiescence of AFCII. The imputation of King's crimes and seriously improper conduct to AFCII provides a separate and independent cause for its debarment.

5. The crimes and seriously improper conduct of AFCII may be imputed to King and W.A.Mathis pursuant to FAR 9.406-5(a), because as officers, directors, shareholders, partners, employees, or other individuals associated with AFCII, they participated in, knew of, or had reason to know of AFCII's crimes and seriously improper conduct. The imputation of AFCII's crimes and seriously improper conduct to King and W.A.Mathis provides a separate and independent cause for their debarments.

6. Traxx is an affiliate of King, as defined in FAR 9.403, because directly or indirectly King controls or can control Traxx. The affiliation of Traxx to King provides a separate and independent basis for its debarment pursuant to FAR 9.406-1(b).

7. Pursuant to FAR 9.403, an "identity of interests among family members" is an "indicia of control" so as to make one family member an affiliate of another. Ms. Mathis and W.A.Mathis are, therefore, affiliates of each other, as defined in FAR 9.403, because they are mother and son to each other and at least indirectly each had the power to control the other, as evidenced by an identity of interest among family members. The affiliation provides a separate and independent basis for their debarments pursuant to FAR 9.406-1(b).

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

DEPARTMENT OF THE AIR FORCE
WASHINGTON, DC 20330-1740

Office Of The Deputy General Counsel

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

3 0 AUG 2001

American Floor Consultants and Installation, Inc.
811 Fox Street, NW
Atlanta, GA 30318

Re: Notice of Superseding Proposed Debarment

Ladies and Gentlemen:

You are hereby notified that the Air Force has superseded the proposed debarment of American Floor Consultants and Installation, Inc. from Federal Government contracting and from directly or indirectly receiving the benefits of Federal assistance programs. The superseding proposed debarment is initiated pursuant to the authority and the procedures of the Federal Acquisition Regulation (FAR) Subpart 9.4. Copies of FAR 9.4, Defense FAR Supplement 9.4 and Appendix H, and 32 C.F.R. Part 25 were provided to American Floor Consultants, Inc. with its initial proposed debarment notice. 32 C.F.R. Part 25 is the Defense Department's implementation of the Nonprocurement Common Rule referenced in FAR 9.401.

The superseding proposed debarment is based upon the information in the attached Superseding Memorandum in Support of the Proposed Debarments (Encl. 1).

The superseding proposed debarment is effective this day and has the same consequences during the period of proposed debarment as stated in the initial Notice of Proposed Debarment forwarded to your company on or about August 10, 2001.

Any communications regarding this matter should be directed to my counsel, Richard A. Pelletier, at (703) 693-9819, or by email at "richard.pelletier@pentagon.af.mil." Any written

submissions should be addressed to Mr. Pelletier and forwarded to him at SAF/GCR, 1740 Air Force Pentagon, Washington, DC 20330-1740.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

Encl.
a/s

cc: Timothy H. Kratz, Esq.

DEPARTMENT OF THE AIR FORCE
WASHINGTON, DC 20330-1740

Office Of The Deputy General Counsel

30 AUG 2001

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. Clayton Willie King
1431 Glynn Oaks Drive
Marietta, GA30008

Re: Notice of Superseding Proposed Debarment

Dear Mr. King:

You are hereby notified that the Air Force has superseded the proposal that you be debarred from Federal Government contracting and from directly or indirectly receiving the benefits of Federal assistance programs. The superseding proposed debarment is initiated pursuant to the authority and the procedures of the Federal Acquisition Regulation (FAR) Subpart 9.4. Copies of FAR 9.4, Defense FAR Supplement 9.4 and Appendix H, and 32 C.F.R. Part 25 were provided to you with your initial proposed debarment notice. 32 C.F.R. Part 25 is the Defense Department's implementation of the Nonprocurement Common Rule referenced in FAR 9.401.

The superseding proposed debarment is based upon the information in the attached Superseding Memorandum in Support of the Proposed Debarments (Encl. 1).

The superseding proposed debarment is effective this day and has the same consequences during the period of proposed debarment as stated in the initial proposed debarment notice forwarded to you on or about August 10, 2001.

Any communications regarding this matter should be directed to my counsel, Richard A. Pelletier, at (703) 693-9819, or by email at "richard.pelletier@pentagon.af.mil." Any written

submissions should be addressed to Mr. Pelletier and forwarded to him at SAF/GCR, 1740 Air Force Pentagon, Washington, DC 20330-1740.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

Encl.
a/s

cc: Timothy Kratz, Esq.

DEPARTMENT OF THE AIR FORCE
WASHINGTON DC 20330-1740

Office of the Deputy General Counsel

30 AUG 2001

SUPERSEDING MEMORANDUM IN SUPPORT OF THE PROPOSED DEBARMENTS OF:

AMERICAN FLOOR CONSULTANTS AND INSTALLATIONS, INC.
TRAXX INDUSTRIES, INC.
CLAYTON WILLIE KING
JULIA ELAINE MATHIS, a/k/a
JULIA WHITE, a/k/a
JULIA MATHIS WHITE
WILLIAM ANDRE MATHIS

Effective August 10, 2001, the Air Force proposed the debarments of American Floor Consultants and Installations, Inc. (AFCII), TRAXX Industries, Inc. (Traxx), Clayton Willie King (King), Julia Elaine Mathis (Ms. Mathis), a/k/a Julia White, a/k/a Julia Mathis White, and William Andre Mathis (W.A.Mathis) from Government contracting and from receiving, directly or indirectly the benefits of federal assistance programs. Effective this date, the Air Force has superseded that action. The actions are initiated pursuant to Federal Acquisition Regulation (FAR) Subpart 9.4

INFORMATION IN THE RECORD

Information in the record indicates that at all times relevant hereto:

1. AFCII was a Georgia corporation engaged in the flooring and resurfacing business. In October 1999 AFCII was awarded contract F31610-99-D-C008 (the contract) to resurface hanger bays at Seymour Johnson Air Force Base, NC (SJAFB).

2. Traxx was a Georgia company, incorporated in February 2000.

3. King was president and shareholder of AFCII, and was the Chief Executive Officer of Traxx.

4. Ms. Mathis was a contracting specialist at the 4th Mission Support Squadron, SJAFB. She was responsible for completing the Performance Evaluation Report for all bidding companies, including AFCII, during the solicitation stage of the contract. She rated AFCII as the lowest responsive, responsible bidder, resulting in the contract being award to AFCII.

5. W.A.Mathis was an employee of AFCII, and the son of Ms. Mathis.

6. Prior to the award of the contract, Ms. Mathis asked King to hire her son, W.A.Mathis. King did hire W.A.Mathis to work for AFCII. King also paid for an airline ticket for W.A.Mathis to

fly to North Carolina, and loaned him money. King made these accommodations to W.A.Mathis in order to obtain improper favorable treatment from Ms. Mathis on behalf of AFCII in the award and administration of the contract.

7. Ms. Mathis endorsed and negotiated at least one of the loan checks from King payable to her son, W.A.Mathis, and kept the money for herself.

8. After the contract was awarded, King offered Ms. Mathis $5,000 to insure that AFCII's invoices were promptly paid, that disputes were resolved, and that the contract ran smoothly. Ms. Mathis did not report that attempted bribe until after investigators had interviewed her concerning allegations about King hiring W.A.Mathis to work for AFCII.

9. During contract performance, AFCII fell behind schedule and ignored specification requirements to such an extent that the contracting officer issued a cure notice demanding the company take corrective action. When the contracting officer tried to evaluate the work done up to the point of the cure notice, he found AFCII had not performed enough work so that he could make an evaluation.

BASIS FOR PROPOSED DEBARMENTS

1. AFCII's willful failure to perform in accordance with the terms of the contract, history of failure to perform and unsatisfactory performance of the contract provides a separate and independent basis for its debarment pursuant to FAR 9.406-2 (b)(1)(i).

2. AFCII's, King's, and Mathis's misconduct is so serious or compelling in nature that it affects their present responsibility to be Government contractors or subcontractors and provides a separate basis for their debarments pursuant to FAR 9.406-2 (c).

3. The seriously improper conduct of King may be imputed to AFCII, pursuant to FAR 9.406-5(a), because his seriously improper conduct occurred in connection with the performance of duties for or on behalf of AFCII, or with the knowledge, approval, or acquiescence of AFCII. The imputation of King's seriously improper conduct to AFCII provides a separate and independent cause for its debarment.

4. The seriously improper conduct of AFCII may be imputed to King and W.A.Mathis pursuant to FAR 9.406-5(b), because as officers, directors, shareholders, partners, employees, or other individuals associated with AFCII, they participated in, knew of, or had reason to know of AFCII's seriously improper conduct. The imputation of AFCII's seriously improper conduct to King and W.A.Mathis provides a separate and independent cause for their debarments.

5. Traxx is an affiliate of King, as defined in FAR 9.403, because directly or indirectly King controls or can control Traxx. The affiliation of Traxx to King provides a separate and independent basis for its debarment pursuant to FAR 9.406-1(b).

6. Pursuant to FAR 9.403, an "identity of interests among family members" is an "indicia of control" so as to make one family member an affiliate of another. Ms. Mathis and W.A.Mathis

are, therefore, affiliates of each other, as defined in FAR 9.403, because they are mother and son to each other and at least indirectly each had the power to control the other, as evidenced by an identity of interest among family members. The affiliation provides a separate and independent basis for their debarments pursuant to FAR 9.406-1(b).

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

DEPARTMENT OF THE AIR FORCE
WASHINGTON, DC 20330-1740

Office Of The Deputy General Counsel

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

30 AUG 2001

American Floor Consultants and Installation, Inc.
811 Fox Street, NW
Atlanta, GA 30318

Re: Notice of Superseding Proposed Debarment

Ladies and Gentlemen:

You are hereby notified that the Air Force has superseded the proposed debarment of American Floor Consultants and Installation, Inc. from Federal Government contracting and from directly or indirectly receiving the benefits of Federal assistance programs. The superseding proposed debarment is initiated pursuant to the authority and the procedures of the Federal Acquisition Regulation (FAR) Subpart 9.4. Copies of FAR 9.4, Defense FAR Supplement 9.4 and Appendix H, and 32 C.F.R. Part 25 were provided to American Floor Consultants, Inc. with its initial proposed debarment notice. 32 C.F.R. Part 25 is the Defense Department's implementation of the Nonprocurement Common Rule referenced in FAR 9.401.

The superseding proposed debarment is based upon the information in the attached Superseding Memorandum in Support of the Proposed Debarments (Encl. 1).

The superseding proposed debarment is effective this day and has the same consequences during the period of proposed debarment as stated in the initial Notice of Proposed Debarment forwarded to your company on or about August 10, 2001.

Any communications regarding this matter should be directed to my counsel, Richard A. Pelletier, at (703) 693-9819, or by email at "richard.pelletier@pentagon.af.mil." Any written

PLAINTIFF'S EXHIBIT D

submissions should be addressed to Mr. Pelletier and forwarded to him at SAF/GCR, 1740 Air Force Pentagon, Washington, DC 20330-1740.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

Encl.
a/s

cc: Timothy H. Kratz, Esq.

AUG-30-2001 10:27 SAF/GCR 703+697+4340 P.04/08

DEPARTMENT OF THE AIR FORCE
WASHINGTON, DC 20330-1740

Office Of The Deputy General Counsel

30 AUG 2001

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Mr. Clayton Willie King
1431 Glynn Oaks Drive
Marietta, GA30008

Re: Notice of Superseding Proposed Debarment

Dear Mr. King:

You are hereby notified that the Air Force has superseded the proposal that you be debarred from Federal Government contracting and from directly or indirectly receiving the benefits of Federal assistance programs. The superseding proposed debarment is initiated pursuant to the authority and the procedures of the Federal Acquisition Regulation (FAR) Subpart 9.4. Copies of FAR 9.4, Defense FAR Supplement 9.4 and Appendix H, and 32 C.F.R. Part 25 were provided to you with your initial proposed debarment notice. 32 C.F.R. Part 25 is the Defense Department's implementation of the Nonprocurement Common Rule referenced in FAR 9.401.

The superseding proposed debarment is based upon the information in the attached Superseding Memorandum in Support of the Proposed Debarments (Encl. 1).

The superseding proposed debarment is effective this day and has the same consequences during the period of proposed debarment as stated in the initial proposed debarment notice forwarded to you on or about August 10, 2001.

Any communications regarding this matter should be directed to my counsel, Richard A. Pelletier, at (703) 693-9819, or by email at "richard.pelletier@pentagon.af.mil." Any written

submissions should be addressed to Mr. Pelletier and forwarded to him at SAF/GCR, 1740 Air Force Pentagon, Washington, DC 20330-1740.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

Encl.
a/s

cc: Timothy Kratz, Esq.

DEPARTMENT OF THE AIR FORCE
WASHINGTON DC 20330-1740

Office of the Deputy General Counsel

30 AUG 2001

SUPERSEDING MEMORANDUM IN SUPPORT OF THE PROPOSED DEBARMENTS OF:

AMERICAN FLOOR CONSULTANTS AND INSTALLATIONS, INC.
TRAXX INDUSTRIES, INC.
CLAYTON WILLIE KING
JULIA ELAINE MATHIS, a/k/a
JULIA WHITE, a/k/a
JULIA MATHIS WHITE
WILLIAM ANDRE MATHIS

Effective August 10, 2001, the Air Force proposed the debarments of American Floor Consultants and Installations, Inc. (AFCII), TRAXX Industries, Inc. (Traxx), Clayton Willie King (King), Julia Elaine Mathis (Ms. Mathis), a/k/a Julia White, a/k/a Julia Mathis White, and William Andre Mathis (W.A.Mathis) from Government contracting and from receiving, directly or indirectly the benefits of federal assistance programs. Effective this date, the Air Force has superseded that action. The actions are initiated pursuant to Federal Acquisition Regulation (FAR) Subpart 9.4

INFORMATION IN THE RECORD

Information in the record indicates that at all times relevant hereto:

1. AFCII was a Georgia corporation engaged in the flooring and resurfacing business. In October 1999 AFCII was awarded contract F31610-99-D-C008 (the contract) to resurface hanger bays at Seymour Johnson Air Force Base, NC (SJAFB).

2. Traxx was a Georgia company, incorporated in February 2000.

3. King was president and shareholder of AFCII, and was the Chief Executive Officer of Traxx.

4. Ms. Mathis was a contracting specialist at the 4th Mission Support Squadron, SJAFB. She was responsible for completing the Performance Evaluation Report for all bidding companies, including AFCII, during the solicitation stage of the contract. She rated AFCII as the lowest responsive, responsible bidder, resulting in the contract being award to AFCII.

5. W.A.Mathis was an employee of AFCII, and the son of Ms. Mathis.

6. Prior to the award of the contract, Ms. Mathis asked King to hire her son, W.A.Mathis. King did hire W.A.Mathis to work for AFCII. King also paid for an airline ticket for W.A.Mathis to

fly to North Carolina, and loaned him money. King made these accommodations to W.A.Mathis in order to obtain improper favorable treatment from Ms. Mathis on behalf of AFCII in the award and administration of the contract.

7. Ms. Mathis endorsed and negotiated at least one of the loan checks from King payable to her son, W.A.Mathis, and kept the money for herself.

8. After the contract was awarded, King offered Ms. Mathis $5,000 to insure that AFCII's invoices were promptly paid, that disputes were resolved, and that the contract ran smoothly. Ms. Mathis did not report that attempted bribe until after investigators had interviewed her concerning allegations about King hiring W.A.Mathis to work for AFCII.

9. During contract performance, AFCII fell behind schedule and ignored specification requirements to such an extent that the contracting officer issued a cure notice demanding the company take corrective action. When the contracting officer tried to evaluate the work done up to the point of the cure notice, he found AFCII had not performed enough work so that he could make an evaluation.

## BASIS FOR PROPOSED DEBARMENTS

1. AFCII's willful failure to perform in accordance with the terms of the contract, history of failure to perform and unsatisfactory performance of the contract provides a separate and independent basis for its debarment pursuant to FAR 9.406-2 (b)(1)(i).

2. AFCII's, King's, and Mathis's misconduct is so serious or compelling in nature that it affects their present responsibility to be Government contractors or subcontractors and provides a separate basis for their debarments pursuant to FAR 9.406-2 (c).

3. The seriously improper conduct of King may be imputed to AFCII, pursuant to FAR 9.406-5(a), because his seriously improper conduct occurred in connection with the performance of duties for or on behalf of AFCII, or with the knowledge,, approval, or acquiescence of AFCII. The imputation of King's seriously improper conduct to AFCII provides a separate and independent cause for its debarment.

4. The seriously improper conduct of AFCII may be imputed to King and W.A.Mathis pursuant to FAR 9.406-5(b), because as officers, directors, shareholders, partners, employees, or other individuals associated with AFCII, they participated in, knew of, or had reason to know of AFCII's seriously improper conduct. The imputation of AFCII's seriously improper conduct to King and W.A.Mathis provides a separate and independent cause for their debarments.

5. Traxx is an affiliate of King, as defined in FAR 9.403, because directly or indirectly King controls or can control Traxx. The affiliation of Traxx to King provides a separate and independent basis for its debarment pursuant to FAR 9.406-1(b).

6. Pursuant to FAR 9.403, an "identity of interests among family members" is an "indicia of control" so as to make one family member an affiliate of another. Ms. Mathis and W.A.Mathis

are, therefore, affiliates of each other, as defined in FAR 9.403, because they are mother and son to each other and at least indirectly each had the power to control the other, as evidenced by an identity of interest among family members. The affiliation provides a separate and independent basis for their debarments pursuant to FAR 9.406-1(b).

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

**DEPARTMENT OF THE AIR FORCE**
**WASHINGTON DC 20330-1740**

**Office of the Deputy General Counsel**

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

31 DEC 2001

Mr. Clayton Willie King
250 Auburn Avenue, N.E.
Suite 307
Atlanta, GA 30303

Re: Notice of Debarment

Dear Mr. King:

By letter of August 10, 2001, the Air Force initiated proceedings to debar you from contracting with the United States Government. The letter provided you with an opportunity to submit information and argument in opposition to the proposed debarment. The proposed debarment was superseded on August 30, 2001. Through counsel, you responded to the superseding proposed debarment notice.

Based upon the information in the administrative record in this matter, I have determined that protection of the Government's interests requires that you be debarred from contracting with the United States Government. The basis for my decision is set forth in the attached Memorandum in Support of the Debarment (Encl. 1). The effects of debarment are those stated in the August 30, 2001, Notice of Superseding Proposed Debarment.

Your debarment is effective immediately and continues for three years from August 10, 2001, the date you were proposed for debarment. Your debarment will terminate on August 9, 2004.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

1 Encl.
a/s

PLAINTIFF'S
EXHIBIT
E

**DEPARTMENT OF THE AIR FORCE**
**WASHINGTON, DC 20330-1740**

Office Of The Deputy General Counsel

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

American Floor Consultants and Installation, Inc.
250 Auburn Avenue, N.E.
Suite 307
Atlanta, GA 30303

3 1 DEC 2001

Re: Notice of Debarment

Ladies and Gentlemen:

By letter of August 10, 2001, the Air Force initiated proceedings to debar American Floor Consultants and Installation, Inc., from contracting with the United States Government. That letter provided American Floor Consultants and Installation, Inc., with an opportunity to submit information and argument in opposition to the proposed debarment. The proposed debarment was superseded on August 30, 2001. Through counsel, American Floor Consultants and Installation, Inc., responded to the superseding proposed debarment notice.

Based upon the information in the administrative record in this matter, I have determined that protection of the Government's interests requires that American Floor Consultants and Installation, Inc., be debarred from contracting with the United States Government. The basis for my decision is set forth in the attached Memorandum in Support of the Debarment (Encl. 1). The effects of debarment are those stated in the August 30, 2001, Notice of Superseding Proposed Debarment.

American Floor Consultants and Installation, Inc.'s debarment is effective immediately and continues for three years from August 10, 2001, the date American Floor Consultants and Installation, Inc., was proposed for debarment. American Floor Consultants and Installation, Inc.'s debarment will terminate on August 9, 2004.

Sincerely,

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)

1 Encl.
a/s

# DEPARTMENT OF THE AIR FORCE

WASHINGTON DC 20330-1740

Office of the Deputy General Counsel

31 DEC 2001

MEMORANDUM IN SUPPORT OF THE DEBARMENTS OF:

AMERICAN FLOOR CONSULTANTS AND INSTALLATIONS, INC.
CLAYTON WILLIE KING

On August 10, 2001, the Air Force proposed the debarments, and on August 30, 2001, superseded the proposed debarments of American Floor Consultants and Installations, Inc. (AFCII) and Clayton Willie King (King) (hereinafter, Respondents) from Government contracting and from receiving, directly or indirectly the benefits of federal assistance programs. These actions were initiated pursuant to Federal Acquisition Regulation (FAR) Subpart 9.4. By letters dated August 28, 2001, September 12, 2001, October 18, 2001, November 27, 2001, and December 18, 2001, Respondents, through counsel, submitted information and argument in opposition to the proposed debarments (the submissions). The submissions and all information in the administrative record have been read and carefully considered.

## INFORMATION IN THE RECORD

Information in the record indicates that at all times relevant hereto:

1. AFCII was a Georgia corporation engaged in the flooring and resurfacing business. On September 30, 1999, AFCII was awarded contract F31610-99-D-C008 (the contract) to resurface hanger bays at Seymour Johnson Air Force Base, NC (SJAFB).

2. King was president and sole shareholder of AFCII.

3. Julia Mathis was a contracting specialist at the 4th Mission Support Squadron, SJAFB. She was responsible for completing the Performance Evaluation Report for all bidding companies, including AFCII, during the solicitation stage of the contract. She rated AFCII as the lowest responsive, responsible bidder, resulting in the contract being award to AFCII. Thereafter she continued to act as administrator for the contract. As such, she made decisions affecting AFCII and the contract, on behalf of the Government.

4. William Andre Mathis was an employee of AFCII, and the son of Julia Mathis.

5. Prior to the award of the contract, Julia Mathis asked Mr. King to hire her son, William Andre Mathis. Shortly after the award of the contract, Mr. King did hire William Andre Mathis to work for AFCII on the SJAFB contract. Mr. King made this accommodation to William Andre Mathis with knowledge that Julia Mathis as the contract administrator would be making ongoing decisions on behalf of the Government affecting AFCII and the contract.

6. After the award of the contract, Mr. King caused AFCII to make two loans to William Andre Mathis in the amounts of $500, and $242.60. No portion of either loan was repaid. Neither Mr. King nor AFCII requested that the loans be repaid until the day after William Andre Mathis resigned his employment with AFCII.

7. Julia Mathis endorsed and negotiated one of the loan checks from AFCII payable to her son, William Andre Mathis.

## DISCUSSION

Respondents offer a number of arguments in opposition to their debarments. First, Respondents deny that AFCII failed to perform in accordance with the terms of the contract, or that it has a history of failing to satisfactorily perform public contracts. Respondents admit that AFCII did not perform the contract in a timely manner, but claim that the failure was caused solely by Julia Mathis' negligent administration of the contract.

For the limited purposes of determining the bases, if any, for Respondents' debarments, I will accept Respondents' representations as to AFCII's performance. I have not therefore considered the evidence of poor contract performance that is contained in the administrative record, and do not find that there is a basis for AFCII's debarment pursuant to FAR 9.406-2(b)(1).

Second, Respondents deny that they committed any misconduct of such a serious or compelling nature as to affect their present responsibility, pursuant to FAR 9.406-2(c). There is evidence in the administrative record of several acts of serious misconduct: (i) AFCII's employment of the Air Force contract specialist's son, William Mathis; (ii) AFCII's two payments of money to William Mathis, each characterized as a "loan;" (iii) AFCII's payment of William Mathis' airfare from his residence in California to the SJAFB job site in North Carolina; (iv) AFCII's payment of William Mathis' airfare from North Carolina to Atlanta, Georgia; and (v) Mr. King's offer of a $5,000 bribe to Ms. Mathis to influence her administration of the contract in a manner favorable to AFCII.

First, Respondents admit that AFCII knowingly employed Mr. Mathis, the contract specialist's son, as a laborer on the site of the contract that was being administered by Ms. Mathis. That act alone is of so serious and compelling a nature as to affect Respondents' present responsibility. Respondents' sole justification for this serious misconduct is that Mr. Mathis' employment commenced after the contract was awarded, and could not therefore have influenced Ms. Mathis' decision in recommending the award of the contract to AFCII. This argument misses the point, both factually and legally.

It is clear from the evidence in the record that Mr. King knew that as the contract specialist, Ms. Mathis made daily decisions affecting AFCII, even after the award of the contract, and throughout the period that AFCII employed Mr. Mathis. Mr. King's denial that he intended

to influence Ms. Mathis is also immaterial, even if true.[1] Lack of specific intent is a defense only to a charge of Bribery. 18 U.S.C. Sec. 201(b). The seriousness of Mr. King's admitted misconduct is recognized elsewhere in the Federal Criminal Code.[2]

Second, Respondents admit that AFCII made two payments to Mr. Mathis, in addition to his $561.00 in wages;[3] a payment of $242.60 on November 8, 1999,[4] and a payment of $500 on November 29, 1999,[5] each characterized as a "loan." The only request for repayment of the loans was made in a letter faxed to Mr. Mathis on December 3, 1999, the day after Mr. Mathis resigned his employment. Those two "loans" are each of so serious and compelling a nature as to affect Respondents' present responsibility. Respondents' sole explanation for this serious misconduct is that loans to AFCII employees were not uncommon, and that loans were also made to the other two AFCII laborers on the Air Force job site. This "defense" of course misses the critical point that the other two laborers were not related to the Air Force employee responsible for making daily decisions affecting AFCII's contract performance.

Respondents repeatedly argue in their submissions that the payments were in fact loans, and that evidence of that is that AFCII received their repayment through payroll deductions. There is no evidence of the repayment, or of the payroll deductions. The evidence is all to the contrary. The only deductions listed on AFCII's internal payroll records were for social security and Medicare tax withholdings. Further, AFCII faxed a letter to Mr. Mathis the day after he resigned, stating that Mr. Mathis owed AFCII the full amounts of $500 and $244 for two loans. Had there been any deductions from Mr. Mathis' paychecks for repayment of the loans, AFCII would not have demanded their repayment in full after Mr. Mathis resigned. Nevertheless, the debate as to whether these payments were "loans" is immaterial. I will assume that they were loans, and will also accept Mr. King's representations that the loans were repaid, even though those representations are contrary to all the documentary evidence.[6]

The uncontested facts remain. AFCII made two loans to Mr. Mathis in amounts well in excess of his total wages for his two weeks of employment. And when the loans were made, AFCII knew that Mr. Mathis was the son of the Air Force contract specialist overseeing the AFCII contract. This conduct is of so serious and compelling a nature as to affect Respondents'

---

[1] The veracity of Mr. King's current denial is not clear. He told a government investigator that he loaned money to Mr. Mathis at Ms. Mathis' request in order to influence her decisions on the contract. He also said that in their conversations they routinely used the code words "West Coast" when referring to her son. *See* FBI interview of Mr. King, January 10, 2001, at p. 3. However, for the limited purposes of determining the necessity of debarment, I will assume that Mr. King did not have the requisite specific intent.

[2] *See* 18 U.S.C. Sec. 201(c), wherein the direct *or indirect* giving of anything of value to a public official is proscribed, even where the giving is not intended to influence an official act. I do not find, and do not need to find that either Respondent committed a criminal offense. The fact that Respondents' admitted misconduct may be proscribed by federal law is indicative of its serious and compelling nature under the FAR.

[3] The $561 in wages paid to Mr. Mathis was the amount reported by AFCII on Mr. Mathis' IRS Form W-2.

[4] Respondents admit that this payment was mailed to William Mathis at his mother's residence in North Carolina one week before Mr. Mathis began working for AFCII, and was endorsed by Julia Mathis.

[5] Mr. Mathis cashed this check on December 1, 1999, the day before he resigned his employment with AFCII.

[6] The fact that Mr. King's representations in the submissions are contrary to the contemporaneous documentary evidence raises additional questions as to the accuracy of AFCII's payroll records and the IRS Form W-2 given to Mr. Mathis. We do not, and need not resolve those questions here.

present responsibility, and provides separate and independent bases for their debarments pursuant to FAR 9.406-2(c).

Third, Respondents deny that they paid for Mr. Mathis' airfare for his travel from his residence in California to the Air Force job site in North Carolina. Although there is some evidence that AFCII did pay for this travel, I accept Respondents' representations and disregard this allegation.

Fourth, Respondents admit that AFCII paid for Mr. Mathis' airfare from North Carolina to Atlanta. They contend, however, that the flight was to enable Mr. Mathis to travel to Atlanta in order to drive an AFCII truck to the job site in North Carolina. The documentary evidence does not support this contention. According to AFCII's payroll records, Mr. Mathis did not work on November 18, 19, 20 or 21, 1999. AFCII nevertheless admits that it paid for his travel to Atlanta on November 18th, and claims in a submission that he drove an AFCII truck from Atlanta to North Carolina on that date. The fact that Mr. Mathis was neither paid for the alleged business travel, nor for driving the company truck back to North Carolina could arguably suggest that the travel was not business related. We need not reach that issue, however, and make no findings with regard to it. For purposes of this proceeding, I accept Respondents' representations, and do not consider this allegation in reaching my decision.

Fifth, Respondents deny that Mr. King offered to pay Ms. Mathis $5,000 to influence her administration of the contract in a manner favorable to AFCII. Although there is evidence that such an offer was made, I accept Mr. King's representations, and do not consider this allegation in reaching a decision in this proceeding.

I find by a preponderance of the evidence that each Respondent committed acts of so serious and compelling a nature as to affect their present responsibility. Each such act establishes an independent cause for debarment pursuant to FAR 9.406-2(c). As I reach that conclusion based upon the uncontested facts relating to AFCII's employment of Mr. Mathis, and its loans to Mr. Mathis, a fact-finding proceeding would serve no purpose. Further, such a proceeding is not required, as Respondents' submissions have not raised a genuine dispute of material fact.[7] *See* FAR 9.406-3(b)(2). Further, Respondents declined our offer to present information and argument informally in a meeting with the debarring official. *See* December 18, 2001, letter from Mr. Kratz to Mr. Pelletier.

Once a cause for debarment is found to exist, the contractor has the burden of demonstrating its present responsibility, and that debarment is not necessary. FAR 9.406-1(a). In determining present responsibility, the debarring official is required to consider the seriousness of the misconduct, as well as the existence of any mitigating or remedial measures.

In an effort to meet their burden of demonstrating their present responsibility, Respondents argue that they are entitled to favorable consideration for two of the ten mitigating

---

7 Respondents have generally requested a fact-finding proceeding. They have not, however, identified the material facts they claim to be genuinely in dispute, even though they were expressly requested to do so in our December 18, 2001, letter. Respondents' reply to that letter merely repeated their generalized request for a fact-finding proceeding.

factors set out in the FAR[8]. They contend that Mr. King brought the activity cited as a cause for debarment to the attention of the government, and that they cooperated fully with government agencies during the investigation. FAR 9.406-1(a)(2) and (4). Respondents have failed to meet their burden of demonstrating either.

First, Respondents did not bring their own misconduct to the attention of the government. All they even claim is that, "... they reported the negligent administration of the SJAFB contract by Ms. Mathis." *See* September 13, 2001, submission, at p. 11. During the investigation of that allegation the government learned of Respondents' misconduct. This is a far cry from the type of candor that would entitle them to favorable consideration under the FAR. Second, it is less than clear that Respondents "fully" cooperated with the government's investigation. Mr. King agreed to be interviewed only after insisting upon, and being granted what was in effect criminal use immunity.

Even if it can be said that Respondents are entitled to consideration for two of the ten FAR mitigating factors, I find that such consideration is insufficient to demonstrate their present responsibility. Respondents do not claim, and are not entitled to consideration for the remaining eight mitigating factors set out in the FAR. Most notably, Mr. King neither recognizes nor understands the seriousness of the misconduct giving rise to the debarments. *See* FAR 9.406-1(a)(10). It is most troubling that he admits that AFCII hired and "loaned" money to the son of the contracting specialist, but repeatedly claims that that conduct was proper. With that attitude it is obvious that both Mr. King and AFCII would continue to commit acts of serious misconduct if permitted to enter into new public contracts. I therefore find that debarment of AFCII and Mr. King is necessary to protect the government's interests.

## FINDINGS

1. Each of AFCII's and Mr. King's separate acts of misconduct is so serious or compelling in nature as to affect their present responsibility to be Government contractors or subcontractors and provides separate and independent bases for their debarments pursuant to FAR 9.406-2 (c).

2. The seriously improper conduct of Mr. King may be imputed to AFCII, pursuant to FAR 9.406-5(a), because his seriously improper conduct occurred in connection with the performance of duties for or on behalf of AFCII, or with the knowledge, approval, or acquiescence of AFCII. The imputation of Mr. King's seriously improper conduct to AFCII provides a separate and independent cause for its debarment.

3. The seriously improper conduct of AFCII may be imputed to Mr. King pursuant to FAR 9.406-5(b), because as an officer and shareholder of AFCII, he participated in, knew of, or had reason to know of AFCII's seriously improper conduct. The imputation of AFCII's seriously improper conduct to Mr. King provides a separate and independent cause for his debarment.

---

[8] Respondents also presented evidence as to the quality of their performance of other government contracts. That evidence has been carefully considered. As the evidence is limited to the quality of AFCII's work and does not address the type of misconduct giving rise to the debarments, it does not establish AFCII's present responsibility.

4. Pursuant to FAR 9.406-1(b), debarment may be extended to affiliates of a contractor. AFCII and Mr. King are affiliates as defined in FAR 9.403 ("affiliates"), because, directly or indirectly, Mr. King controls or can control AFCII. The affiliation of AFCII and Mr. King provides a separate and independent basis for their debarments.

## DECISION

Pursuant to the authority granted by FAR Subpart 9.4, Defense FAR Supplement, subpart 209.4, and 32 C.F.R. Section 25, and based on the evidence contained in the administrative record and the findings herein, American Floor Consultants and Installations, Inc., and Clayton Willie King are debarred for a period of three years from August 10, 2001, the date they were proposed for debarment. Their debarments shall terminate on August 9, 2004.

STEVEN A. SHAW
Deputy General Counsel
(Contractor Responsibility)