IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN FLOOR CONSULTANTS )
AND INSTALLATIONS, INC., )
and CLAYTON W. KING, )
)
Plaintiffs, )
)
vs. ) ACTION NO. 05-921C
) (Judge C. Miller)
THE UNITED STATES, )
Defendants.

**BRIEF IN RESPONSE TO MOTION TO DISMISS**

Come now the Plaintiffs, American Floor Consultants and Installations, Inc. (hereinafter "American"),and Clayton W. King (hereinafter "King") and hereby respond to Defendant's Motion to Dismiss as follows:

**Preliminary Statement**

This matter arises out of an express written agreement entered into between the Plaintiffs and the United States Air Force. At the time the Agreement was entered into, Plaintiffs were performing a contract for the Air Force installing flooring at the Seymour Johnson Air Force Base (SJAB) in North Carolina. It is undisputed that the express written agreement at issue was entered into within the context of and during the Plaintiffs' flooring contract at SJAB. It is undisputed that the express written agreement related to the administration of the flooring contract. It is undisputed that express written agreement was entered into to protect Plaintiffs' interest in the ongoing flooring contract as well as Plaintiffs' continued ability to enter into Federal government contracts. It is undisputed that the express written agreement was entered

into to assist the Air Force in resolving issues pertaining to the conduct of one of its contracts administrators.

Contrary to the argument implicit in the government's motion and brief, this matter is not about a "plea" or " immunity" agreement gone awry. This case is about the administration of a flooring contract entered into on November 29, 1999 and an ancillary agreement concerning the administration of that contract. This case is not about a deal arranged by a prosecutor with an informant or plea bargain with a criminal defendant or potential target. There was no prosecutor involved. In fact, the agreement did not involve any prosecutorial authority. In entering into the contract at issue, the government clearly stepped down from the throne of the sovereign and engaged in a transaction such as private parties engage in among themselves. The Plaintiffs' claims fall within the purview of the Tucker Act and are not barred by sovereign immunity. Accordingly, this Court possesses subject matter jurisdiction over the claims asserted by Plaintiffs. Defendant's motion to dismiss should be denied.

**Statement of Facts**

As alleged in the complaint, in November 1999, Plaintiffs were awarded a contract to install flooring at SJAB. American performed the work required by the SJAFB contract and completed that work on or about February 2001. During Plaintiffs' performance of the SJAB contract, Plaintiffs notified the Air Force of potential improper actions by an Air Force Contracting Specialist. The Air Force then investigated those potentially improper actions. As part of that investigation, the Air Force requested certain information from Plaintiffs. Prior to responding with the requested information, through counsel, Plaintiffs requested that the Air Force provide a written guarantee that Plaintiffs' cooperation in the investigation would have no

adverse consequences on Mr. King or American or on the SJAB contract. In a letter agreement dated January 4, 2000, from Captain Brown to Mr. King, the Air Force provided a further written assurance and guarantee stating:

> "I do have the authority to guarantee the following: ***you have my assurance and guarantee*** that neither you, nor American Floor Consultants, nor any other employee of American Floor Consultants, is or will be the subject of ***any investigation or criminal proceeding*** resulting from this matter." [Complaint Ex. "A"].

The January 4, 2000 letter agreement constituted an express contract between the Air Force and the Plaintiffs. The Defendant has conceded the existence of the agreement for purposes of this motion. On January 6, 2000, the Air Force also provided a memorandum indicating that it had no intention of terminating the SJAB contract. [Complaint Ex. "B"].

In reliance upon the contract, Plaintiffs cooperated with the Air Force and provided the materials requested. Plaintiffs performed as required by the contract. Notwithstanding the January 4, 2000 and the January 6, 2000 contracts and Plaintiffs' performance and cooperation with the Air Force's investigation, on or about August 10, 2000, the Air Force sent Plaintiffs a Notice of Proposed Debarment (the "Notice"). On December 31, 2001, in breach of the January 4, 2000 agreement and the January 6, 2000 memorandum, the Air Force issued Notices of Debarment to American and King, debarring them from contracting with the United States government for three years.

Plaintiffs show that the January 4, 2000 contract was entered into by the Air Force in a proprietary manner ancillary to the November 29, 1999 contract for the purchase of goods and services at SJAB. Plaintiffs show that the breach of contract by the Air Force is an act for which

private citizens would be liable to the Plaintiffs. Accordingly, the government is not entitled to sovereign immunity and this case should not be dismissed for lack of subject matter jurisdiction.

**Argument and Citation of Authority**

On a motion to dismiss based upon a lack of subject matter jurisdiction, the court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. Scheuer v. Rhodes, 416 US 232 (19740. Jurisdiction under the Tucker Act requires the plaintiff to identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. §1941. The Tucker Act waives the sovereign immunity of the United States to allow subject matter jurisdiction founded upon an express or implied contract with the United States. 28 U.S.C. §1941(a)(1).

Tucker Act jurisdiction does not extend to every agreement with the United States. In general there are two main categories of contracts that the government makes: proprietary and sovereign. Doe v. United States, 37 Fed.Cl 74 (1996). The Tucker Act extends jurisdiction in those instances in which the government waived sovereign immunity where the United States has entered into proprietary contracts, i.e. those contracts in which the sovereign steps off the throne and engages in transactions as private parties engage in among themselves. The United States Court of Federal Claims has jurisdiction over most proprietary contracts. See, Awad v. United States, 61 Fed.Cl. 281 (2004).

Plaintiffs respectfully submit that, contrary to the argument advanced by the United States, this case does not involve a contract with the United States as sovereign. Rather the facts in this case clearly indicate that, at all times, the engagements of the Plaintiffs were with the United States Air Force acting in its proprietary capacity.

In order to avoid addressing this case on its merits, the Government attempts to squeeze the unique facts in this case into the sovereign immunity analysis set out in Kania v. United States, 650 F.2d 264 (Ct. Cl. 1981) and its progeny Pappas v. United States, 66 Fed. Cl. 1 (2005). It is not a good fit. Kania and Pappas are readily distinguishable.

As the Government sets out in its Brief, Kania stands for the proposition that this Court is a court of limited jurisdiction and the Government has waived sovereign immunity in regard to proprietary contracts. Proprietary contracts are those in the "sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." Awad at p. 284.

In Kania, the plaintiff was a public employee whose employer was investigated by the Interstate Commerce Commission and then the United States Attorney's office for political and financial corruption. Kania cooperated with the AUSA and was subpoenaed to appear before a grand jury. Later, Kania was again solicited by the AUSA for information and entered into an agreement with the Government, the terms of which were disputed. The dispute concerned whether Kania had been given full transactional or only conditional immunity in the agreement. Kania was subsequently indicted. In his Tucker Act claim, Kania sought to recover damages for the legal fees he expended in defending against the indictment.

In dismissing the suit for want of subject matter jurisdiction, the Kania court noted that the "high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court." The Court further noted that "it is particularly unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials." Kania at 269.

The lack of subject matter jurisdiction, sovereign immunity and the need for the governmental authority to have specific authority to bind the United States to pay money for breach of an agreement in Kania was clearly a function of the fact that the agreement at issue arose within the context of the criminal justice system.

The Pappas case involves an agreement to perform certain "services" in exchange for which the Government promised to abandon an ongoing investigation of criminal charges against Pappas. The precise services are redacted from the opinion. It is clear from the opinion, however, that the "services" involved some element of the criminal justice system and that, at the times, Pappas was being investigated for racketeering and Internal Revenue Code violations. It is also clear that Pappas did not, at any time, engage with the Government as a contractor. The only agreement involved Pappas was the agreement for "services" in exchange for not being prosecuted in ongoing investigation.

Following the line of cases arising out of Kania, this Court determined that it did not have subject matter jurisdiction over Pappas' claims that the Government breached the "services" agreement by indicting him. As in Kania, the Pappas Court held that the immunity agreement at issue was entered into by the Government in it sovereign capacity. Therefore, absent monetary compensation being contemplated and authorized in the agreement, this Court did not have subject matter jurisdiction.[1]

---

[1]The Pappas Court's analysis included references to the following opinions: Sanders v. United States, 252 F.3d 1329 (Fed.Cir. 2001); Houston v. United States, 60 Fed.Cl. 507 (2004); Drakes v. United States, 28 Fed. Cl. 190 (1993) and Silva v. United States, 51 Fed. Cl. 374 (Fed.Cir. 2002). All of these cases dealt with agreements between prosecutors and defendants or potential defendants. None of the cases concerned agreements where the Government was acting as a governmental contractor as it did in the instant case where American and King had an actual contract with the Air Force for the performance of flooring services.

The Pappas Court reiterated the language from Kania noting that the sovereign could be subject to contractual liability under the Tucker Act where it steps off the throne and engages in transactions such as private parties engage in among themselves.

Both Kania and Pappas are readily distinguishable from this matter by a myriad of facts unique to this case and not present in either of the cases cited by the United States:

1) Unlike Kania and Pappas, the relationship between Plaintiffs and the United States was, at its inception, strictly commercial. Plaintiffs had been awarded and were performing a contract for the Air Force. This was clearly a proprietary function and not a sovereign function.

2) Unlike Kania and Pappas, the only interaction Plaintiffs had with the United States was as a governmental contractor performing flooring installation for the Air Force. Plaintiffs were not informants. Kania and Pappas were both witnesses cooperating with the government in prosecutions.

3) Unlike Kania and Pappas, this case does not arise out of situation where the initial interaction was between a prosecutor and a defendant or prosecutor and a witness.

4) Unlike Kania and Pappas, the contract was entered into by the Air Force through a civil attorney and not a prosecutor. Also, the decision to debar was made by the counsel for "Contractor Responsibility" and not an AUSA or a prosecutor.

5) The agreement not to investigate Plaintiffs was made to secure Plaintiffs from adverse commercial impact of losing the Seymour Johnson contract. Therefore, the agreement was, in fact, an agreement ancillary to the initial commercial undertaking between Plaintiffs and the Air Force. Thus, it was strictly a proprietary matter. In Kania and Pappas, the deals were made to avoid personal prosecution and not to preserve an existent commercial relationship.

6) The January 4, 2000 agreement must be read in conjunction with the January 6, 2000 Memorandum to American Floor indicating that the Air Force had no intention of terminating the flooring contract. [Complaint, Ex. "B"]. These documents graphically illustrate the commercial and proprietary nature of the undertakings. No such commercial relationships were involved in Kania and Pappas.

7) The underlying issues out of which the instant agreement arose pertained to the negligent manner in which the contract between Plaintiffs and Seymour Johnson was administered. In Kania and Pappas the issues were not related to an existing commercial contract.

8) Unlike Kania and Pappas, the agreement herein was not a plea or immunity deal. It was an agreement entered into by both parties to protect their respective commercial interests.

9) Plaintiffs were not subjected to criminal sanctions as the result of the Government's breach of the agreement. Plaintiff's suffered commercial and monetary losses resulting from being unable to engage in Federal Governmental contracts which were the principal revenues for Plaintiffs. In Kania and Pappas, both plaintiffs were subjected to prosecution and sought civil remedies in this court for the results of those prosecutions and the costs incurred in defending against the charges.

10) Plaintiffs in this case do not have another court to redress the breach of the agreement. In Kania and Pappas, both plaintiffs could have argued the breach of the immunity deals in the criminal court having jurisdiction over the prosecutions.

11) Plaintiffs are not asking this Court to invade the function of enforcing and policing the criminal law which is assigned to the courts of general jurisdiction. Plaintiffs are seeking to

remedy a breach of contract arising out of commercial relationship.

12) Plaintiff are not seeking to recover costs and expenses attendant to defending a criminal charge as there was never such a charge. Plaintiffs are seeking the monetary losses proximately caused by the Government's breach of the agreement in that Plaintiffs were debarred for three years from government contracts.

From the foregoing, it is quite clear that the Air Force and Plaintiffs made an agreement as to which the core subject matter was the commercial interests of the Air Force and the manner in which it administers it proprietary contracts with outside contractors. The Air Force was protecting the manner in which it did business with commercial interests. The Air Force was protecting its proprietary function much the same as any private commercial entity would protect its commercial interests. The investigation and agreement was a part of the government's proprietary function in administering its acquisitions system.

Although it is not binding authority on this Court, Plaintiffs respectfully submit that the analysis employed in United States v. Zanjanckauskas, 346 F.Supp. 2d 251 (D. Mass. 2003) is instructive given the facts in this case. In Zanjanckauskas, a written agreement was made whereby Zanjanckauskas agreed to provide information about his background to the United States in consideration for the United States's promise not to use that information in any immigration proceeding or government proceeding. When the United States filed an action to revoke his United States citizenship, Zanjanckauskas filed a counterclaim for breach of the aforementioned agreement under 28 U.S.C. §1346(a)(2), the "Little Tucker Act".

After a thorough analysis of Kania and Sanders v. Unites States, 252 F.3d 1329 (Fed.Cir. 2001), the Court denied a motion to dismiss Zanjanckauskas' counterclaim for want of subject

matter jurisdiction. The Court determined that inasmuch as the contract at issue did not arise out of a criminal context but was civil in nature, the contract was governed by civil contract principles for which the remedy is damages. Accordingly, the district court had jurisdiction under the "Little Tucker Act."

The facts in this case present a an even more compelling basis for the exercise of Tucker Act jurisdiction. Not only did the contract at issue here arise out of a non-criminal context, it arose out of an existing commercial transaction between the Plaintiffs and the Air Force. As set forth above, the contract in this case was clearly commercial and proprietary in nature.

The parties herein entered into an express written agreement. Plaintiffs performed and the Air Force did not. Plaintiffs have been severely damaged. The government should be required to account for its breach of contract.

Kania and Pappas make much of the fact that the disgruntled defendants had the option to take their problems to the criminal courts having supervisory powers over immunity agreements. Plaintiffs were never in a criminal court, no criminal court jurisdiction was ever invoked and no plea or immunity agreement was ever even entered into. The agreement which forms the basis of this suit arose out of the Plaintiff's desire to present a problem with the contract administrator involved in the SJAB contract and to protect its commercial interest in that and future contracts with the United States government. Since Plaintiffs were not criminals and not under the jurisdiction of a criminal court, aside from this court, there is no court of resort to redress Plantiffs' claims.

Plaintiffs respectfully submit they have carried their burden of demonstrating subject matter jurisdiction under the Tucker Act and that their claims are not barred by sovereign immunity.

**Conclusion**

For each and all of the foregoing reasons, Defendant's Motion to Dismiss should be denied.

This ____ day of November, 2005.

/s/ David M. Kupsky
David M. Kupsky
Attorney for Plaintiffs

Suite 1250, Two Midtown Plaza
1349 W. Peachtree Street
Atlanta, Georgia 30309
404-881-1111 (telephone)
404-881-8040 (facsimile)