ORIGINAL

# In the United States Court of Federal Claims

FILED
MAR 14 2006
U.S. COURT OF FEDERAL CLAIMS

No. 05-921C
(Filed March 14, 2006)

* * * * * * * * * * * * * * * * * * * *

**AMERICAN FLOOR CONSULTANTS AND INSTALLATIONS, INC., and CLAYTON W. KING**

Plaintiffs,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * *

Contracts; Tucker Act, 28 U.S.C. § 1491(a)(1) (2000); jurisdiction; agreement immunizing contractor, officers, and employees from prosecution in exchange for assistance in action to remove government employee; whether debarment, a civil proceeding, within scope of agreement.

David M. Kupsky, Atlanta, GA, for plaintiff.

Doris S. Finnerman, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. John T. Lauro, United States Department of the Air Force, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court on defendant's motion to dismiss. Plaintiff contractor negotiated with a government employee an agreement immunizing plaintiff contractor and its president and employees from criminal prosecution in exchange for assisting in an action to remove a contract administrator. The issue to be decided is whether the United States Court of Federal Claims has subject matter jurisdiction pursuant to 28 U.S.C. § 1491(a)(1) (2000), over a complaint alleging the violation of a contact not to prosecute when the agency debarred plaintiff corporation from eligibility for future contracts with the Government. Argument is deemed unnecessary.

## FACTS

The following facts are derived from the complaint and documents attached thereto. American Floor Consultants and Installations, Inc. ("AFCII"), a Georgia corporation engaged in the flooring and resurfacing business, and its president and sole shareholder, Clayton W. King (collectively "plaintiffs"), allege that the United States Air Force (the "Air Force") debarred plaintiffs from contracting with the Government, in violation of a written contract, dated January 4, 2000, in which the Air Force agreed that the plaintiffs and their employees would not be the subject of any criminal investigation.

The current controversy arises out of events surrounding the award of a contract to resurface Air Force hanger bays at Seymour Johnson Air Force Base in North Carolina ("SJAFB contract"). Contracting Specialist Julia Mathis was responsible for conducting the Performance Evaluation Reports for all bidding companies during solicitation of the resurfacing contract. Prior to the award of the contract, Ms. Mathis contacted Mr. King, seeking employment with AFCII for her son, William A. Mathis. Ms. Mathis then rated AFCII the lowest responsive, responsible bidder. Her decision resulted in the award of the contract to AFCII on September 30, 1999. With full knowledge that Ms. Mathis was the contract administrator, Mr. King subsequently hired her son.

During the period following award of the contract, Mr. King caused ACFII to make two loans to Mr. Mathis, in the amounts of $500.00 and $242.60. One of the loan checks, made payable from ACFII to Mr. Mathis, was endorsed and negotiated by Ms. Mathis, who was continuing to act as the contract administrator. No portion of either loan was repaid.

As contract performance continued, plaintiffs reported to the Air Force the negligent administration of the SJAFB contract by Ms. Mathis. An investigation ensued, and plaintiffs' own misconduct came to light. By letter dated January 4, 2000, Capt. Davis L. Brown II requested information from Mr. King to assist in the Air Force's removal action against Ms. Mathis. Capt. Brown's letter gave his "assurance and guarantee that neither [Mr. King], nor American Floor Consultants, nor any other employee of American Floor Consultants, is or will be the subject of any investigation or criminal proceeding resulting from this matter."

On August 10, 2001, the Air Force notified plaintiffs that it was proposing to debar plaintiffs from government contracting. The Air Force considered the aforementioned facts, as well as allegations that plaintiffs purchased two airline tickets for Mr. Mathis for non-work-related travel during his two-week period of employment and that Mr. King offered Ms. Mathis a $5,000.00 bribe for favorable contract administration. The Air Force ultimately determined that, while there was insufficient evidence to support the accusations of plane

tickets and attempted bribery, plaintiffs' employment of and loans to Ms. Mathis's son warranted debarment. 1/ "AFCII's willful failure to perform in accordance with the terms of the contract, history of failure to perform and unsatisfactory performance of the contract provide[d] a separate and independent basis for its debarment[,] pursuant to [48 C.F.R. (FAR) §] 9.406-2(b)(1)(i) [(2006)]." Superseding Memorandum in Support of the Proposed Debarments of American Floor Consultants and Installations, Inc., *et al.*, 2 (Aug. 30, 2001). In accordance with FAR § 9.403 (2006), Traxx Industries, Inc., a Georgia company of which Mr. King is the Chief Executive Officer, was deemed to be an affiliate of Mr. King and therefore, also was debarred by letter of December 31, 2001. The debarment was effective immediately and was set to terminate on August 9, 2004.

Plaintiffs brought suit in the United States District Court for the Northern District of Georgia, Am. Floor Consultants & Installations, Inc. v. Roche, No. 01-2340 (N.D. Ga., filed Aug. 31, 2001). They voluntarily dismissed the case on December 10, 2002. Alleging various tort violations by the Secretary of the Air Force and individual employees, plaintiffs filed a second complaint in the District Court for the Northern District of Georgia. Am. Floor Consultants & Installations, Inc. v. Roche, No. 04-CV-751 (N.D. Ga., filed Mar. 17, 2004). The action was dismissed for lack of jurisdiction on March 9, 2005. On August 23, 2005, plaintiffs filed a complaint in the Court of Federal Claims, seeking $25 million for loss of income, profits, and business opportunities, in addition to "continuing stigma upon their reputations in the business community," due to the Air Force's alleged breach of contract. Compl. filed Aug. 23, 2005, ¶38. Defendant thereafter filed its motion to dismiss for lack of subject matter jurisdiction.

**DISCUSSION**

Before a court may proceed to the merits of a case, jurisdiction must be established. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998). The burden of establishing subject matter jurisdiction falls upon the party seeking to invoke it. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). Federal courts are presumed to lack jurisdiction unless the record affirmatively indicates the contrary. Renne v. Geary, 501 U.S. 312, 316 (1991).

---

1/ All improper conduct of Mr. King was imputed to AFCII, pursuant to 48 C.F.R. (FAR) § 9.406-5(a) (2006), and all improper conduct of AFCII was imputed to Mr. King and Mr. Mathis, pursuant to FAR § 9.406-5(b).

The court "may consider relevant evidence in order to resolve [a] factual dispute" where a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citing Land v. Dollar, 330 U.S. 731, 735 (1947)). Where "a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." Thomson v. Gaskill, 315 U.S. 442, 446 (1942); see also Hishon v. King & Spalding, 467 U.S. 69, 73 n.2 (1984); Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The jurisdictional reach of the Court of Federal Claims is defined by the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), which "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States," Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005). The Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); see also Trauma Serv. Group v. United States, 104 F.3d 1321, 1324-25 (Fed. Cir. 1997) ("Jurisdiction based on contract 'extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.'" (quoting Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996))). However, "[i]t is well established that the Court of Federal Claims has jurisdiction only where and to the extent the government has waived its sovereign immunity, and any waiver of sovereign immunity cannot be implied but must be unequivocally expressed." Ledford v. United States, 297 F.3d 1378, 1381 (Fed. Cir. 2002) (internal quotations omitted). Thus, while "there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement," Sanders v. United States, 252 F.3d 1329, 1334 (Fed. Cir. 2001), this presumption cannot stand in the face of agreements entered into by the United States in its sovereign capacity, see Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981) ("The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves."); Drakes v. United States, 28 Fed. Cl. 190, 193 (1993) ("Administering the criminal justice system is an activity that lies at the heart of sovereign action.").

While "it [is] possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness," Kania, 650 F.2d at 268, venerable precedent limits these circumstances. The United States Court of Appeals for the Federal Circuit has determined that where a claim for money damages involves the alleged breach of such an agreement, the Court of Federal Claims should look to the rationale of Kania, which established two prerequisites for exercising jurisdiction. See Awad v. United States, 301

F.3d 1367, 1375 (Fed. Cir. 2002) ("Having determined that [plaintiff's] suit does sound in contract, we think that the best approach is to allow the Court of Federal Claims to determine whether the suit is the type of contract action over which it may exercise jurisdiction.").

The first requirement, as set forth by the United States Court of Claims in Kania, is that the government representative who entered into or ratified the agreement must possess the specific authority "to make an agreement obligating the United States to pay money." 650 F.2d at 268. As in the formation of any valid contract with the United States, a representative must also have the actual authority to bind the United States. Trauma Serv. Group, 104 F.3d at 1325. Thus, in order to bind the Government, Capt. Brown must have possessed both the authority to obligate the United States to pay money and to make a decision not to proceed with debarment proceedings.

With regard to the authority to determine whether debarment is appropriate, FAR § 9.406-1 (2006), states that "[i]t is the debarring official's responsibility to determine whether debarment is in the Government's interest." "Debarring official" is defined in FAR § 9.403 as "(1) an agency head or (2) a designee authorized by the agency head to impose debarment." Plaintiffs have proffered no evidence that Capt. Brown could meet this description. Likewise, plaintiffs have not made a showing that Capt. Brown possessed the authority to obligate the United States to pay money. A party to an agreement with the Government accepts "the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." Trauma Serv. Group, 104 F.3d at 1325 ; see also Heckler v. Cmty. Health Serv. of Crawford County, 467 U.S. 51, 63 (1984) ("[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law."); Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("Anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); Flexlab, LLC v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept.").

The second Kania requirement is that the plea, immunity, or witness protection agreement "spell[] out how in such a case the liability of the United States is to be determined." 650 F.2d at 268. Consequently, if a plea, immunity, or witness protection agreement is violated, the United States is obligated to pay money for its breach "only if the agreement clearly and unmistakably subjects the United States to monetary liability for any breach." Sanders, 252 F.3d at 1331. Assuming, *arguendo*, that Capt. Brown possessed the authority necessary to bind the Government and that his letter of January 4, 2000, created an

otherwise valid contract, the absence of any money-mandating language in the agreement relating to debarment is fatal to plaintiffs' claim.

Moreover, even if Capt. Brown had the requisite authority and his letter contained the necessary money-mandating language, the facts, as alleged, still would fall short of stating a successful claim. Whereas Capt. Brown's letter asserted that plaintiffs would not be the subject of any criminal proceeding, a debarment is a civil proceeding. See FAR § 9.402 (2006) (stating that debarments may be "imposed only in the public interest for the Government's protection and not for purposes of punishment"). Thus, plaintiffs could not sustain a claim for breach of a contract granting criminal immunity.

Plaintiffs have sought to differentiate the present action from Kania and its progeny by characterizing plaintiffs' relationship with the Government as "strictly commercial." Pls.' Br. filed Nov. 28, 2005, at 7. According to plaintiffs, the agreement not to prosecute, as embodied in Capt. Brown's letter, was merely "ancillary to the initial commercial undertaking" and meant to protect the parties' "respective commercial interests." Id. at 7, 8. Despite plaintiffs' creative attempt to recharacterize Capt. Brown's letter, "[t]he alleged consideration offered by the government for Mr. [King's assistance] was . . . immunity from criminal prosecution, an offer only available from the [G]overnment in its sovereign capacity." Pappas v. United States, 66 Fed. Cl. 1, 6 (2005). For purposes of this analysis, the fact that plaintiffs' relationship with the Government arose out of a commercial endeavor is of no significance.

Where, as here, a "court's conclusion is that the source [of jurisdiction] as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

[signature]

**Christine Odell Cook Miller**
Judge